PATRICK O'REILLY *vs.* GILBERT MURDOCH.—*June* 1843.

The act of 1791, ch. 68, gives jurisdiction to justices of the peace, where the real debt and damages do not exceed ten pounds, current money, or one thousand pounds of tobacco.

The act of 1809, ch. 76, gives jurisdiction to the justices of the peace, in all cases where the real debt and damages doth not exceed the sum of fifty dollars.

Both these acts, in defining jurisdiction, refer not to the sum claimed, but to the sum recovered, as the standard by which it was to be regulated.

By the act of 1813, ch. 162, the sphere of the justices power was extended to trespasses upon real property, by cutting, destroying or carrying away timber or wood from off any land where the damage should not exceed the sum of fifty dollars. The test of jurisdiction here also is the sum recovered.

By the act of 1824, ch. 138, jurisdiction is given to the justice to injuries over real property, for which t. q. c. f. might be maintained, and where the damages "*laid or claimed*" should not exceed fifty dollars.

The act of 1825, ch. 51, extends the jurisdiction of justices to trespasses of either real or personal property, where the *damages claimed or laid* shall not exceed the sum of fifty dollars.

The act of 1834, ch. 296, gives jurisdiction to justices of the peace, in all cases where the debt or damages "laid or claimed" shall not exceed the sum of fifty dollars, excepting from the operation of that act, actions of slander, assault and battery, and where titles to land shall come in question.

The act of 1824 first introduced a new test of jurisdiction, by making it to

depend upon the damages claimed or laid, and from that time all subsequent laws providing for the recovery of damages, have adopted the same standard.

If a plaintiff estimates his damages at a sum not exceeding fifty dollars, jurisdiction is given to a single magistrate, because the sum recovered cannot exceed the sum claimed; but where the nature of the injury is such as to justify a claim of damages to a larger amount in his declaration, the established jurisdiction of the county court is not taken away.

These views are not to be considered as in any respect applicable to cases of contract, but are intended to be confined to actions for torts.

In an action against an innkeeper, for negligently taking care of the plaintiff's horse in his stable, so that he was killed, the damages claimed exceeded fifty dollars. HELD: that the county court had jurisdiction of the action.

Where, in the progress of a trial, the defendant excepted to instructions granted in favor of the plaintiff, and afterwards the judgment was arrested, but upon the appeal of the plaintiff, reversed, this court will not enter final judgment, but remand the cause for judgment on the verdict to the county court, in order that the defendant may have an opportunity of appealing from the instruction given against him.

APPEAL from *Anne Arundel* County Court.

This was an action of *trespass upon the case*, brought by the appellant against the appellee on the 16th April 1841. The plaintiff declared for that whereas, according to the customs and laws of this State, all innkeepers who keep common inns to entertain travellers, and cattle of travellers, upon the roads where such inns are kept, and who put up at, and set up their horses, &c., in the same, are bound to keep the cattle, goods and chattels of such travellers, both by day and night, being within those inns, without detriment, damage, diminution or loss, so that no hurt, detriment or damage whatsoever, shall happen to the said guests, or to their cattle, goods or chattels, or any part thereof, through the default or carelessness of the said innkeepers or their servants; and whereas, the said defendant, on the 28th October 1840, and before, kept, and from thence hitherto hath kept and still keeps, as master thereof, a certain common inn, at the city of *Annapolis*, in the said county, commonly called or known by the name of the Farmers' Inn; and while the said defendant so kept, as master thereof, the said inn, to wit, on the day and year aforesaid, the said plaintiff, travelling along and by the place where the said inn then was and stood, with a mare of the said plaintiff, then and there

5      v.1

stopt at the said inn, and brought the said mare into the said inn, and set up the said mare at and in the said inn, and left and lodged the said mare therein, for the said mare to be there baited, entertained, guested and fed, and taken good care of therein, as in a common and public inn until the same should be called for again by the said plaintiff for hire and reward, as used and customary in such inns to be paid to the said defendant, for the standing, lodging, baiting, entertaining, guesting, feeding and taking care of the said mare, at and in the said inn; yet the said plaintiff through the default, neglect and mere carelessness of himself and his servants, in this behalf, while the said mare so remained and continued at and in the said inn, for the purpose and on the cause aforesaid, to wit, on the same day and year aforesaid, at the city aforesaid, in the county aforesaid, so badly, carelessly and negligently took care of the said mare, that during that time, to wit, on the same day and year aforesaid, at the county aforesaid, the said mare, of the price of one hundred and thirty dollars, was in the said inn, through the mere default of care and neglect of the said defendant and his said servants, killed, by having her neck broken, either by the said *Gilbert* or some of his servants, or some other person or persons unknown to the said plaintiff, so that the said mare on the day and year aforesaid, at the city and county aforesaid, died, whereby the said plaintiff saith he is injured, and hath damage to the value of *three hundred dollars*, current money, and therefore he brings his suit, &c.

The defendant pleaded NON CUL: upon which issue was joined. The jury assessed the plaintiff's damages at $47.50. But because the damages did not exceed $50, the county court arrested the judgment, and the plaintiff appealed.

At the trial of this cause, the plaintiff to sustain the issue joined on his part, proved to the jury by a competent witness, that the plaintiff on some day in the month of October eighteen hundred and forty, rode on horse-back with the witness to the city of *Annapolis*, and as witness believes, turned into defendant's yard, the said defendant being an inn-keeper regularly licensed; and by another witness that in the month of Octo-

ber eighteen hundred and forty, he having several horses in defendant's stable, he went into the stable with the ostler at ten or eleven o'clock at night, and there found every thing right; that the next day at day-break, or thereabouts, the ostler informed him that a horse in the stable was hung, and that going into the stable he found a horse which he afterwards was told by defendant was plaintiff's, dead, and that it came to its death by pressing its head through a hole between its stall and the adjacent stall, which hole deponent believed was broken by the horse in one or other of the stalls. The deponent also stated, that he had several horses at the stable for several days, and that they were well taken care of by the ostler, and that the stalls in defendant's stable were in good condition, as well as could be found elsewhere; and by a third witness the said plaintiff proved, that the witness was ostler to the defendant in the month of October eighteen hundred and forty, and that finding the horse for which this action is brought, in the defendant's stable yard, he took it into the stable and there kept it well for several days, during all which time he enquired of defendant and others about the premises for the owner of the horse, but without discovering him; and that he did not discover who was the owner until after the horse was dead; that on the night on which the horse died, he was in the stable at ten or eleven o'clock at night, and found every thing was right; that before day-light on the succeeding day he was again in the stable, when he discovered that the horse in question was dead, and that it came by its death by pressing its head through a hole between its stall and the adjacent stall, which hole was made by breaking off a part of the plank between the two stalls, which was done either by the horse in question, or horse in the adjacent stall; that the stalls in the defendant's stable were in good condition, and that as fast as any accident happened to any of them it was repaired.

Whereupon the plaintiff by his counsel prayed the court to instruct the jury:

That if the jury should be of opinion from the evidence, that the horse of the plaintiff was in the stable of the defendant as inn-keeper, and was there killed, the plaintiff is entitled to recover damages for such loss, without proof that his death was the consequence of a want of care on the part of the defendant or his servants.

Whereupon the court (DORSEY, C. J., and BREWER, A. J.,) instructed the jury, that if they should be of opinion from the evidence, that the horse of the plaintiff was in the stable of the defendant as a public inn-keeper, and was there killed, the plaintiff is entitled to recover damages for such loss, without proof by him that his death was the consequence of a want of care on the part of the defendant or servant, and that to prevent a recovery in such a case where it did not appear by the proof of the plaintiff, whether the horse was killed by reason of the negligence or want of proper care on the part of the defendant or his servants, or not, the defendant must make it appear to the jury that the horse was not killed by reason of the want of such care on the part of the defendant or his servants. The defendant excepted.

The appeal was argued before BUCHANAN, C. J., STEPHEN ARCHER, CHAMBERS and SPENCE, J.

By BOYLE and A. C. MAGRUDER, for the appellants, and
By T. S. ALEXANDER, for the appellee.

STEPHEN, J. delivered the opinion of this court.

The matter in controversy in this case is of small amount, but the question involved is one of considerable importance in the administration of civil justice. It is a question of jurisdiction, and can only be decided by a careful examination of the various Acts of Assembly conferring power upon single magistrates or justices of the peace, in the recovery of small debts and other matters submitted to their judicial cognizance. The decision of such questions is not free from difficulty, on account of the multiplicity and mutability of the legislation by which our code of laws is characterised upon such subjects;

but after the best consideration we have been able to give to the case before us, we have come to the conclusion that there was error in the judgment of the court below, and that the same ought to be reversed. Until within a recent period of our judicial history, the jurisdiction of the county court was clear and indubitable; and we do not think, that upon a fair construction of the laws enlarging the jurisdiction of justices of the peace, it has been ousted or taken away. And the opinion we have been induced to adopt, derives no inconsiderable sanction from the very marked and striking change of phraseology in which the several Acts of Assembly have been couched, that have from time to time been passed upon the subject; some of which seem to look to the fruits of the judgment or the sum recovered, and others to the matter or thing put in demand, as the test of jurisdiction. It is alone by keeping in view this distinctive feature of the laws, fixing the boundaries of jurisdiction between the courts of law, and justices of the peace, that a correct or satisfactory result can be arrived at. The act of 1791, ch. 68, gives jurisdiction to justices of the peace, where "the real debt and damages doth not exceed ten pounds, current money, or one thousand pounds of tobacco." By the act of 1809, ch. 76, the jurisdiction is given "in all cases where the real debt and damages doth not exceed the sum of fifty dollars," but the only enlargement of jurisdiction conferred by this act, is confined to the sum, and has no reference to the subject matter of the controversy, further than the amount of the sum involved in the litigation. The act expressly provides that judgment shall be given "according to the laws of the land and the equity and right of the matter, in the same manner, and under the same rules and regulations, to all intents and purposes, as such justices of the peace are now authorised and empowered to do, when the debt and damages do not exceed the sum of ten pounds, current money." Both these laws, in defining the jurisdiction, expressly and manifestly refer, not to the sum claimed or put in demand, but to the sum recovered, as the standard by which it was to be regulated. By an act passed in the year 1813, ch. 162, the sphere

of the judicial power of justices of the peace was extended to trespasses upon real property, by cutting, destroying or carrying away timber or wood from off any land, where the damage should not exceed the sum of fifty dollars. Here too it is to be remarked, that the jurisdiction is to be tested, not by the damages claimed or demanded, but by the sum recovered; the language of the act being, "where such damage doth not exceed the sum of fifty dollars," which manifestly imports the amount of the injury, actually sustained, and not the estimate which the party himself may make of it. By an act passed in 1824, ch. 138, jurisdiction is given to redress any injury to real property, for which an action of trespass *quare clausum fregit* might be maintained, where the damages claimed or laid should not exceed the sum of fifty dollars. Here, for the first time, the rule fixing the jurisdiction, is changed, from the amount recovered, by the judgment of the magistrate, to the damage as laid or claimed by the party to the suit, and the jurisdiction of the county courts is expressly taken away in all such cases. By an act passed in 1825, ch. 51, the jurisdiction of justices is extended to trespasses either to real or personal property, where the damages claimed or laid shall not exceed the sum of fifty dollars, and the power of the county courts to adjudicate or hold plea of such cases is also taken away. By the act of 1834, ch. 296, jurisdiction is given to justices of the peace in all cases where the debt or damages laid or claimed, shall not exceed the sum of fifty dollars, excepting from the operation of that act, actions of slander, assault and battery, and actions where the title to lands shall come in question. By section 10 of the act of 1791, the provisions of that act are restricted to debts or sums of money or tobacco due on contract, and to damages for the non-delivery of grain or other articles, contracted to be delivered. In that respect, no change is made by the act of 1801. By the act of 1813, jurisdiction is first given in cases of trespass, and is founded upon the sum recovered. The act of 1824 first introduces a new test of jurisdiction, by making it to depend upon the damages claimed or laid; and from that time all subsequent laws

providing for the recovery of damages, have adopted the same standard, founding the jurisdiction not upon the sum recovered, but upon the amount put in demand. If the plaintiff estimates his damages at a sum not exceeding fifty dollars, jurisdiction is given to a single magistrate, because the sum recovered cannot exceed the sum claimed; but where the nature of the injury is such as to justify a claim of damages to a larger amount in his declaration, the established jurisdiction of the county courts, existing prior to the passage of the several Acts of Assembly, is not taken away, but remains perfect and unimpaired. In cases of tort, sounding in damages, such as the one before this court, it is not perceived what other rule could well be adopted. In the language of *Judge Chase*, in 3 *Dallas,* 407, "it must be acknowledged, that in actions of tort or trespass from the nature of the suits, the damages laid in the declaration afford the only practicable test of the value of the controversy;" and *Chief Justice Elsworth* in the same case says, "in an action of trespass or assault and battery, where the law prescribes no limitation as to the amount to be recovered, and the plaintiff has a right to estimate his damages at any sum, the damage stated in the declaration is the thing put in demand, and presents the only criterion to which, from the nature of the action, we can resort in settling the question of jurisdiction." "The proposition then is simply this: where the law gives no rule, the demand of the plaintiff must furnish one; but where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded." In drawing the line of partition, between the jurisdiction of justices of the peace, and the county courts, the legislature of this State seem to have been governed by similar considerations, and in all cases of tort have made the jurisdiction to depend, not upon the sum recovered, but upon the damages demanded. If the injury sustained may be redressed by a sum not exceeding fifty dollars, and the plaintiff is willing to limit his right of recovery to that amount, jurisdiction is given to a justice of the peace to decide upon his case; but if he desires an indemnity, in the form of damages, to a larger amount, the county courts

O'Reilly *vs.* Murdoch.—1843.

are not divested of their original jurisdiction, and remain the appropriate tribunal to afford him redress; these views are not to be considered as in any respect applicable to cases of contract, but are intended to be confined to actions of tort, where the amount of the damages are peculiarly a subject for the consideration of the jury.

After this opinion, *Alexander* for the appellee, moved the court that no judgment ought to be entered in this case, but the judgment of the county court being reversed, a writ of procedendo ought to be awarded to the county court, in order that such proceedings may be had, as would enable the appellee, the defendant below, to obtain the judgment of this court on the question reserved in the bill of exceptions, and insisted:

1. That his motion is sustained by the decision of this court in the case of *The State, use of Charlotte Hall School, vs. Greenwell,* 4 *Gill & John.* 419.

2. That independent of said decision, it would be necessary for the purposes of justice, that the case be sent back, in order that it may be put in a condition to enable this court to pass pass upon the correctness of the instruction by the court below to the jury.

BY THE COURT—
    JUDGMENT REVERSED AND PROCEDENDO AWARDED.